# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **BRENDA ARREOLA, AS NEXT FRIEND OF PHILLIP MICHAEL VALLEJO, JR. et al.,** | § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § § | **Civil Action No. 4:17-cv-00629-P** |
| **CITY OF FORT WORTH et al.,** | § § § | |
| **Defendants.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant M.J. Ochsendorf's Motion to Dismiss for Failure to State a Claim, Failure of Standing and Capacity, and Failure to Overcome Qualified Immunity, and alternatively Motion to Transfer ("Ochsendorf's MTD"). *See* ECF No. 14. Also before the Court is City of Fort Worth's ("City") and City of Fort Worth Police Department's ("FWPD") First Amended Motion to Dismiss ("First Amend. MTD"). *See* ECF No. 69. Having considered the Ochsendorf's Motion to Dismiss, briefing, and applicable law, the Court finds that Ochsendorf's Motion to Dismiss should be and is hereby **GRANTED in part and DENIED in part**. Having considered City's and FWPD's First Amended Motion to Dismiss, briefing, and applicable law, the Court finds that the First Amended Motion to Dismiss should be and is hereby **GRANTED.**

# BACKGROUND[1]

On July 30, 2015, Phillip Vallejo and Brenda Vallejo went to Ojos Locos, an establishment located off of Houston Street in Fort Worth, Texas, to celebrate Phillip's thirtieth birthday.  Compl. at ¶ 13.  By the early morning of July 31, 2015, Phillip and Brenda prepared to leave Ojos Locos when Phillip returned to their table to tip the employees of Ojos Locos.  *Id.* at ¶ 14.  According to Plaintiffs' Complaint, Brenda waited for Phillip near the main entrance of Ojos Locos.  While she waited, a group of intoxicated males acted aggressively and inappropriately toward her.  *Id.*  Phillip returned to find Brenda visibly upset, and he engaged in a verbal exchange with three of the individuals.  *Id.* at ¶ 15.  During the exchange, one of the men pulled up his shirt to reveal a gun tucked in his waistband.  *Id.* at ¶ 16.  Phillip and Brenda walked to their car, and Phillip retrieved a cigarette and smoked it.  *Id.*  The group of men involved in the verbal altercation eventually walked away from Ojos Locos.  *Id.*  Phillip and Brenda did not leave but remained immediately in front of Ojos Locos "discussing what had just occurred."  *Id.* at ¶ 17.

According to Plaintiffs, Ochsendorf, an officer with the FWPD, arrived on a bicycle. *Id.* at ¶ 18.  Plaintiffs' account of what happened next is as follows:

> Upon arrival, Defendant Ochsendorf drew his gun and aimed it towards Phillip's back and Brenda who was facing both Phillip and Defendant Ochsendorf.  Defendant Ochsendorf and Phillip were facing in the same direction towards Ojos Locos[,] which was still occupied with several

---

[1]Unless otherwise cited, the Court draws its factual account from the allegations in Plaintiffs' Original Complaint ("Compl.").  *See* ECF No. 1; *Manguno v. Prudential Prop. & Case. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002) (noting that when considering a Rule 12(b)(6) motion to dismiss "all facts pleaded in the complaint must be taken as true").

> patrons as it was still open for business.  Defendant Ochsendorf stalked
> Phillip who remained in the immediate presence of Brenda, and then began
> to fire his gun into Phillip's back[, which was] confirmed by the video
> recording and an independent autopsy report.

*Id.*  Plaintiffs allege that Phillip "had his hands raised and fully exposed" while he was being shot and that Ochsendorf continued to fire at Phillip as he was falling to the ground. *Id.* at ¶ 19.

Plaintiffs allege that after Phillip was shot, he laid on the ground bleeding, handcuffed, and yelling that he could not breathe; despite this, Ochsendorf and the other responding officers refused to respond to or provide Phillip with emergency medical care. *Id.* at ¶¶ 20–21.  Plaintiffs allege that Phillip was later pronounced dead at the hospital.  *Id.* at ¶ 24.

## PROCEDURAL HISTORY

Plaintiffs Brenda Vallejo, individually and as next friend of minors P.M.V., Jr. and G.B.V. and as representative of the Estate of Phillip Vallejo and Rebecca Vallejo, filed the underlying Complaint on July 31, 2017, against City, FWPD, and Ochsendorf individually and as an agent of the FWPD.  Compl., ECF No. 1.  Plaintiffs alleged a variety of federal and state claims.  *Id.*

City and FWPD filed a Motion to Dismiss and alternatively a Motion to Transfer (ECF No. 12), and shortly thereafter, Ochsendorf filed a Motion to Dismiss and Motion to Transfer (ECF No. 14).[2]  The motions to dismiss and responsive briefs were referred to

---

[2]The crux of Defendants' motions to transfer regarded a previously filed civil action by Plaintiffs against these same Defendants arising out of the same facts that was pending in this

United States Magistrate Judge Hal R. Ray, Jr. (ECF No. 30), who issued Findings, Conclusions, and Recommendation that the motions to transfer be denied and the case stayed pending the administration of the estate of Phillip Vallejo.  *See* ECF No. 31.  Judge Ray also recommended to defer on ruling on the pending motions to dismiss until the administration of Phillip's estate had proceeded through probate.  *See id.* at 1–2.  The then-presiding District Judge Reed O'Connor adopted the findings and conclusions and stayed and administratively closed the case for sixty days, pending the appointment of a personal representative of Phillip Vallejo's estate.  *See* ECF No. 36.  Judge O'Connor also deferred ruling on the motions to dismiss but indicated that Plaintiffs' excessive force claim would likely survive 12(b)(6) scrutiny.  *See id.* at 6.

On March 29, 2019, Plaintiffs filed a Motion to Reinstate and sought to reopen the case because Brenda Vallejo, now Brenda Arreola, had been appointed as the Dependent Administrator of the Estate of Phillip Vallejo.  ECF No. 42.  After receiving responsive briefing, Judge O'Connor entered an order reinstating the case and amending the style. ECF No. 51.  Plaintiffs are now identified as Brenda Arreola as next friend of Phillip

---

Court before the Honorable United States District Judge John McBryde.  Defendants alleged that Plaintiffs strategically voluntarily dismissed the first case without prejudice in order to refile with hopes of avoiding Judge McBryde.  *See* ECF No. 12 at 18 (seeking transfer to Judge McBryde to "avoid forum shopping"); ECF No. 14 at 28 (arguing that Plaintiffs' actions in the prior case "raises at least the prospect of judge shopping").  Of course, if these allegations are correct, Plaintiff's actions would be disrespectful to the court and unbecoming a member of the bar.  *See, e.g.*, *Texas Lawyer's Creed—A Mandate for Professionalism, reprinted in* TEXAS RULES OF COURT 735–37 (West 2018) ("I will always recognize that the position of judge is the symbol of both the judicial system and administration of justice," "I will refrain from conduct that degrades this symbol," and "I will conduct myself in Court in a professional manner and demonstrate my respect for the Court and the law.").

4

Michael Vallejo Jr., and Gianna Brielle Vallejo, and as Dependent Administrator of Estate of Phillip Vallejo.  On December 27, 2019, City and FWPD filed a First Amended Motion to Dismiss.  ECF No. 69.  Plaintiffs subsequently filed a Response.  *See* ECF No. 81.

Accordingly, Ochsendorf's Motion to Dismiss and City's and FWPD's First Amended Motion to Dismiss are now ripe for review.

## LEGAL STANDARDS

### A.    Motion to Dismiss

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted."  FED. R. CIV. P. 12(b)(6).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

5

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

## B.    Qualified Immunity

"Because qualified immunity is an immunity from suit rather than a mere defense to liability," it is important to resolve "immunity questions at the earliest possible stage in litigation" so that the immunity is not effectively lost. *Pearson v. Callahan*, 555 U.S. 223, 231–32, 129 S. Ct. 808 (2009) (internal citations and quotation marks omitted); *see also Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) ("[A]s the Supreme Court has noted, that is precisely the point of qualified immunity: to protect public officials from expensive, intrusive discovery until and unless the requisite showing overcoming immunity is made."). Thus, "questions regarding qualified immunity are resolved on the face of the pleadings and with limited resort to pre-trial discovery." *James ex rel. James v. Sadler*, 909 F.2d 834, 838 (5th Cir. 1990). Courts require that § 1983 plaintiffs satisfy specific pleading requirements in cases, such as this, in which an immunity defense can be raised.

*Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 620 (5th Cir. 1992).  Qualified immunity is available to public officials such as prison guards and state hospital employees, who exercise discretion.  *See, e.g.*, *Wood v. Strickland*, 420 U.S. 308, 318 (1975) ("[I]n varying scope, a qualified immunity is available to officers of the executive branch of Government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based.  It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct." (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 247–48 (1974))).

When a public official asserts qualified immunity, the Court must proceed to a two-step analysis.  *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 337 (5th Cir. 2003).  "First, we must determine whether the plaintiff has made a sufficient showing that the official violated a clearly established constitutional or statutory right."  *Id.*  "A right is clearly established when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008).  If the plaintiff satisfies step one, the Court asks whether the official's actions were objectively reasonable in light of the clearly established right.  *Foley*, 355 F.3d at 337. "We consider an official's conduct to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the conduct violated the Constitution."  *Gates*, 537 F.3d at 419.  At the motion to

7

dismiss stage of a proceeding, the alleged conduct of the defendant is what "is scrutinized for objective legal reasonableness."  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).  Although courts normally handle the two steps sequentially, district courts retain "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

## ANALYSIS OF OCHSENDORF'S MOTION TO DISMISS

The claims that Plaintiffs assert against Ochsendorf are as follows:  (1) violations of Plaintiffs' Fourteenth Amendment by deliberate indifference to serious medical needs; (2) violations of Plaintiffs' Fourth and Fourteenth Amendment rights by using excessive force; (3) deprivations of Plaintiffs' familial relationships and companionship; (4) a state law claim for intentional infliction of emotional distress; and (5) various claims against Ochsendorf in his official capacity.  Compl. at ¶¶ 42–86.

### A.    Deliberate Indifference to Serious Medical Needs, Health, and Safety

Plaintiffs first bring a 42 U.S.C. § 1983 claim for violations of the Fourteenth Amendment when Defendants allegedly denied Phillip adequate medical care after being shot. *Id.* at ¶¶ 42–51.  Plaintiffs allege that although Defendants "knew that Phillip Vallejo was bleeding and having difficulty breathing while handcuffed and required immediate medical attention[,]" Defendants "effectively disregarded this risk of further medical complications and/or additional physical harm including loss of life thereby constituting deliberate indifference as to Phillip Vallejo's need for medical treatment by not effectuating proper medical treatment and medical care."  *Id.* at ¶¶ 45–46.

8

In his Motion to Dismiss, Ochsendorf asserts that Plaintiffs' claim should be analyzed under the procedural and substantive due process guarantees of the Fourteenth Amendment rather than the Eighth Amendment's protection from cruel and unusual punishment. MTD at 10. In either case, however, Ochsendorf contends that there must be a showing of deliberate indifference, which in turn requires Plaintiffs to allege that Ochsendorf's alleged actions were both objectively unreasonable and that he intended the consequences of his actions. *Id.* at 11. Ochsendorf argues that nowhere in Plaintiffs' Complaint do they allege the location or actions of Ochsendorf immediately after Phillip was shot. *Id.* Finally, Ochsendorf argues that Plaintiffs fail to allege how long Phillip went without medical treatment or when and what care he ultimately received. *Id.* Thus, Ochsendorf seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.* at 12.

In their Response, Plaintiffs rely on the same legal standard articulated by Ochsendorf: the constitutional right of a pretrial detainee to medical care arises from the Fourteenth Amendment, and a violation of this right requires a showing of deliberate indifference. MTD Resp. at 7. Plaintiffs then assert that the Complaint has alleged Ochsendorf's affirmative acts that establish Ochsendorf acted with deliberate indifference. *Id.* at 8 (citing Compl. at ¶¶ 16–25, 42–51, 62–66, 79–83).

The parties are correct that "[a] pretrial detainee's constitutional right to medical care, whether in prison or other custody, flows from the procedural and substantive due process guarantees of the Fourteenth Amendment." *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000). "Liability for failing to provide such care attaches if the plaintiff can

show that a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted." *Id.* (citation omitted).

"Deliberate indifference requires that the official have *subjective* knowledge of the risk of harm." *Id.* (citation and internal quotation marks omitted). "Mere negligence will not suffice, and deliberate indifference, i.e., the subjective intent to cause harm, cannot be inferred from a failure to act reasonably." *Id.* (citations and internal quotation marks omitted). Thus, to show subjective deliberate indifference, a plaintiff must allege that: (1) the defendant had subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn; (2) the defendant actually drew that inference; and (3) the defendant's response to the risk indicates that the defendant subjectively intended that harm occur. *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009) (per curiam); *see also Wagner*, 227 F.3d at 324 (explaining that to prevail on a claim of "deliberate denial of medical care, [the claimant] needs to establish more than the typical quantum of evidence necessary to overcome a qualified immunity defense. That is, she must show not only that the defendants' actions in failing to provide [the claimant] medical attention before he arrived at the jail were objectively unreasonable, but also that defendants intended the consequence of those actions").

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Justice,* 239 F.3d 752, 756 (5th Cir. 2001). "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Id.* Nor can deliberate indifference be inferred "merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."

10

*Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001).  Instead, "[d]eliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Herrin v. E. Baton Rouge Sheriff's Office*, No. 15-CV-82-SDD-SCR, 2015 WL 4898489, at *3 (M.D. La. Aug. 17, 2015) (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

In Plaintiffs' Complaint, they allege that after Ochsendorf shot Phillip multiple times in the back, Ochsendorf's body camera captured Phillip "screaming for help and stating that he is unable to breathe while handcuffed and bleeding on the ground," yet Ochsendorf failed to respond to Phillip's requests for help and medical attention.  *See* Compl. at ¶¶ 19, 20.  The Complaint then alleges more generally that "Officers" refused to remove Phillip's handcuffs, left him lying on the pavement, and failed to administer basic first aid.  *Id.* at  21.  The Complaint also suggests that some other officers prevented paramedics from treating Phillip:  "[O]fficers appeared more concerned with inspecting Phillip's body to locate entrance and exit wounds, as paramedics waited from a distance." *Id.*

As an initial matter, these allegations against Ochsendorf are not enough to demonstrate that he had subjective knowledge from which an inference of substantial risk of serious harm could be drawn because Plaintiffs' Complaint does not identify where Ochsendorf was or what he was doing immediately after the shooting.  But even if the specific allegations against Ochsendorf showed that he did draw an inference of the substantial risk of serious harm (e.g., if he remained and inspected Phillip's body for entrance and exit wounds with the other officers), the Complaint contains no specific

11

allegations indicating that Ochsendorf subjectively intended for Phillip to die at the scene. *See Wagner*, 227 F.3d at 324. Further, Plaintiffs do not assert that any delay in care caused Phillip substantial harm. That is, Plaintiffs set forth no allegations that Ochsendorf's failure to render medical care caused Phillip to die. *See Henry v. N. Texas State Hosp.*, No. 7:12-CV-00198-O, 2013 WL 3870292, at *4 (N.D. Tex. July 9, 2013) ("A few-minute delay in receiving medical care is not a violation of a due process right, because not every 'reasonable official would understand that what he is doing [in assessing the situation and causing a few-minute delay] violates that [due process] right' to medical care for the involuntarily committed." (quoting *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008))).

Accordingly, Ochsendorf's Motion to Dismiss Plaintiffs' claim for deliberate indifference to serious medical needs, health, and safety on the basis of qualified immunity is **GRANTED**.

## B. Excessive Force

Plaintiffs' next claim against Ochsendorf is for excessive force in violation of the Fourth and Fourteenth Amendments. Compl. at ¶¶ 62–66. Ochsendorf seeks dismissal of this claim for failure to state a claim under rule 12(b)(6). MTD at 12–16. Ochsendorf asserts that although Plaintiffs pleaded this claim under both the Fourth and Fourteenth Amendments, the facts of this case and applicable law render the Fourteenth Amendment

inapplicable and that Plaintiffs' claim is only for violations of the Fourth Amendment. *Id.* at 12–13.[3]

To state a Section 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that he was seized and that he suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). To "gaug[e] the objective reasonableness of the force used by a law enforcement officer, we must balance the amount of force used against the need for force." *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996) (citing *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993)). This balancing test "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396.

"Unlike some areas of constitutional law, the question of when deadly force is appropriate—and the concomitant conclusion that deadly force is or is not excessive—is well-established." *Reyes v. Bridgwater*, 362 F. App'x 403, 406 (5th Cir. 2010) (citing *Tennessee v. Garner,* 471 U.S. 1, 11–12 (1985) for the "holding that deadly force is not justified unless a suspect poses a risk of serious harm at that point in time"). Under Fifth

---

[3]In their Response to Ochsendorf's Motion to Dismiss, Plaintiffs argue for a Fourteenth Amendment violation based on excessive force. MTD Resp. at 11–12. They present the claim as one "for relief of Fourteenth Amendment violations of substantive due process on the part of Defendant Ochsendorf." *Id.* at 12. To the extent Plaintiffs actually pleaded a claim for violation of substantive due process under the Fourteenth Amendment, the Court **DISMISSES** it because claims "based on alleged pretrial deprivations of . . . constitutional rights . . . , under the holding in *Albright* [*v. Oliver*, 510 U.S. 266 (1944)], . . . should be brought under the Fourth Amendment." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010).

Circuit precedent, the focus of the Court's inquiry is "the act that led [the officer] to discharge his weapon." *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009). "The cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others." *Reyes*, 362 F. App'x at 409.

Plaintiffs allege in their Complaint that Ochsendorf drew his gun when he arrived at the scene and that he pointed the gun at Phillip's back and at Brenda. Compl. at ¶ 18. Plaintiffs allege that Ochsendorf and Phillip were facing the same direction and that "Ochsendorf stalked Phillip who remained in the immediate presence of Brenda, and then began to fire his gun into Phillip's back . . . ." *Id.* Plaintiffs further allege that "[w]hile being shot by Defendant Ochsendorf, Phillip had his hands raised and fully exposed. Defendant Ochsendorf deliberately fired multiple shots into Phillip's back[,]" and he "continued to fire shots at Phillip as he was falling to the ground." *Id.* at ¶ 19. Plaintiffs allege that an autopsy report confirms that the gunshots entered Phillip's back. *Id.* at ¶ 18.

Ochsendorf argues that the allegations in Plaintiffs' prior lawsuit demonstrate that Plaintiffs have deliberately omitted material facts that Ochsendorf had commanded Phillip to put his hands in the air and turn around. MTD at 13. Ochsendorf then states that Plaintiffs fail to allege whether Phillip was holding a gun or what he did with any gun when he was confronted by Ochsendorf. *Id.* This statement suggests that Ochsendorf's position is that Phillip was in fact holding a gun and noncompliant when Ochsendorf arrived at the scene. Indeed, Ochsendorf's argument is that Plaintiffs' factual allegations—"Phillip Vallejo was shot in the back during or shortly after getting into an altercation outside a bar at 1:20 a.m. and after being ordered by an officer to raise his hands"—are insufficient to

14

state a claim for excessive force and instead require the Court to speculate. *See* MTD Reply at 4 ("Plaintiffs again attempt to plead and argue their case through suggestion and omission. Phillip Vallejo was armed with a handgun. Plaintiffs know that, but in their complaint they misleadingly try to rely on an inaccurate witness account to avoid having to directly allege . . . that Phillip was unarmed.").

Ochsendorf may be correct that Plaintiffs are cherry-picking facts to create a narrative that Ochsendorf shot an unarmed man in the back while the man had his hands up. But at this stage, the Court does not go beyond the allegations of Plaintiffs' Complaint to make such factual determinations. Moreover, Ochsendorf does not provide any additional materials referenced in Plaintiffs' Complaint, which the Court may properly consider in the context of a Rule 12(b)(6) motion. Based on Plaintiffs' specific allegations, Ochsendorf shot Phillip in the back while Phillip had his hands up and thus was not posing a serious, immediate threat to himself or others. These allegations, taken as true for purposes of this motion, demonstrate that Ochsendorf's use of deadly force was objectively unreasonable. Thus, the Court finds that Plaintiffs have stated a claim that Ochsendorf violated Phillip's clearly established right to be free from the excessive use of force. *See Webster v. City of Houston*, 735 F.2d 838, 845 (5th Cir. 1984) (en banc), *aff'd on reh'g*, 739 F.2d 993 (5th Cir. 1984) (en banc); *see also Reyes*, 362 F. App'x at 409 (reversing summary judgment in favor of officer on qualified immunity when the facts were disputed as to whether there was an immediate threat such that would justify the officer's use of deadly force); *Rivera v. City of San Antonio*, No. SA-06-CA-235-XR, 2006 WL 3340908, at *7 (W.D. Tex. Nov. 15, 2006) (denying motion to dismiss excessive force claim against

15

an individual officer because "[i]f these facts are true, [the officer's] actions may have violated the standard for reasonable seizures under the Fourth Amendment, that a police officer may not seize an unarmed, non-dangerous suspect by shooting him dead").

Accordingly, Ochsendorf's Motion to Dismiss Plaintiffs' excessive force claim should be and is hereby **DENIED**.

## C.     Deprivation of Familial Relationship and Companionship

Plaintiffs next bring a Section 1983 claim for deprivation of familial relationships as violating Plaintiffs' Fourteenth Amendment substantive due process rights.  Compl. at ¶¶ 67–71.  Ochsendorf moves to dismiss this claim because Plaintiffs have not alleged that any of Ochsendorf's actions were directed at them and have failed to plead that Ochsendorf acted with the requisite intent. MTD at 16.  Ochsendorf further argues that the Fifth Circuit law is "far from clearly established" as to any such claim.  *Id.*  Plaintiffs respond that Ochsendorf's intent argument is unsupported by law and that at least one district court in the Fifth Circuit concluded that a plaintiff stated a claim for deprivation of familial companionship and society in a similar factual context.  MTD Resp. at 18 (citing *Saenz v. City of El Paso*, No. EP-14-CV-244-PRM, 2015 WL 459032 (W.D. Tex. Jan. 28, 2015)).

"[T]o state a claim for deprivation of familial association under § 1983, a plaintiff must allege that the defendant intended 'to interfere with a particular relationship protected by the freedom of intimate association.'"  *Molette v. City of Alexandria*, No. CIV.A. CV040501A, 2005 WL 2445432, at *5 (W.D. La. Sept. 30, 2005) (quoting *Trujillo v. Board of Cty. Com'rs*, 768 F.2d 1186 (10th Cir. 1985)).  In 2006, a sister court recognized that at that time *Molette* was perhaps the only court in the Fifth Circuit that has addressed

16

a Section 1983 familial association claim:  "This Court could only locate one district court case from the Fifth Circuit that addressed a claim for deprivation of the right of familial association in a police misconduct case."  *Rivera*, 2006 WL 3340908, at *9.  Relying on the Tenth Circuit opinion in *Trujillo*, the *Rivera* court agreed that "a plaintiff must allege that the defendant intended to interfere with a particular relationship protected by the freedom of intimate association."  *Id.* (citing *Trujillo* 768 F.2d at 1190).

Applying the same deprivation of familial association analysis as *Rivera*, Plaintiffs have failed to allege Ochsendorf acted with the intent to interfere with or deprive Plaintiffs of their familial and spousal relationship with Phillip.  That is, Plaintiffs' Complaint contains no allegations to support that Ochsendorf intentionally deprived Plaintiffs' of their right to familial association.  Indeed, the Court does not recognize any facts that would support that Ochsendorf had knowledge, or could have had knowledge that Phillip had any family such that Ochsendorf could have acted with intent to interfere with Plaintiffs' relationship with Phillip.  *See id.* (explaining that "the alleged conduct by the state, however improper or unconstitutional with respect to the deceased, will work an unconstitutional deprivation of the freedom of intimate association only if the conduct was directed at that right").

Accordingly, Ochsendorf's Motion to Dismiss Plaintiffs' deprivation of familial relationship and companionship is **GRANTED.**

## D.     State Law Claims

Ochsendorf seeks dismissal of Plaintiffs' state law claims for failure to provide medical care and intentional infliction of emotional distress (Compl. at ¶¶ 79–86).

Ochsendorf's MTD at 17.  Ochsendorf contends that Section 101.106 of the Texas Civil Practice and Remedies Code requires dismissal of Plaintiffs' state law claims because Plaintiffs' filing of the suit against City and Ochsendorf constituted Plaintiffs' election of remedies as to any state law claims.  *Id.* at 17–18; *see* TEX. CIV. PRAC. & REM. CODE 101.106.  Plaintiffs do not respond to these contentions.

The Texas Civil Practice and Remedies Code provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. *On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed*.

TEX. CIV. PRAC. & REM. CODE 101.106(f) (emphasis added).  In *Alcala v. Texas Webb County*, the United States District Court applied this provision and dismissed state law claims (including intentional infliction of emotional distress) brought by an individual against several county employees because the plaintiff had also sued the county.  620 F. Supp. 2d 795, 804–05 (S.D. Tex. Jun. 3, 2009).  In applying this Texas statute, the *Alcala* court conducted an *Erie* analysis and concluded that Section 101.106 should not be barred under the *Erie* doctrine.  *Id.* at 807.

Here, Ochsendorf properly raised Section 101.106(f), and Plaintiffs failed to respond.  Thus, Ochsendorf's Motion to Dismiss Plaintiffs' state law claims should be and is hereby **GRANTED.**

**E.     Official Capacity Claims**

Ochsendorf finally seeks dismissal of Plaintiffs' official capacity claims against Ochsendorf because they are redundant since a claim against a public official in his official capacity is equivalent to an action against the government body that employs the official. Ochsendorf's MTD at 19.  Plaintiffs do not respond to this argument.

The Court agrees with Ochsendorf that any official capacity claims do nothing more than duplicate Plaintiffs' claims against City and FWPD.  *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers . . . in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves."); *Flores v. Cameron Cty.*, 92 F.3d 258, 261 (5th Cir. 1996); *Rivera*, 2006 WL 3340908, at *6 (granting motion to dismiss official capacity claims against individual officers "[b]ecause the City has also been named as a party, [so] no purpose is served by allowing Plaintiffs' duplicative section 1983 official capacity claims against Officers Montes and Barnes to proceed").

Therefore, Ochsendorf's Motion to Dismiss Plaintiffs' official capacity claims should be and is hereby **GRANTED.**

**F.     Leave to Amend**

Plaintiffs alternatively request leave to amend if the Court grants Ochsendorf's Motion to Dismiss.  MTD Resp. at 14.  But Plaintiffs provide no explanation as to any

additional facts that they would plead, nor does the Court discern any, that would preclude dismissal. In short, it appears to the Court that Plaintiffs have stated their best case.

Therefore, Plaintiffs' request for leave to amend is **DENIED**.

### ANALYSIS OF CITY'S AND FWPD'S AMENDED MOTION TO DISMISS

Plaintiffs allege Texas state law claims against City and FWPD for (1) negligent hiring, supervision, and training; (2) intentional infliction of emotional distress; (3) failure to furnish medical care; and federal claims for (1) deliberate indifference to serious medical needs, (2) a *Monell* claim under Section 1983, (3) supervisor liability under Section 1983, (4) excessive force under Section 1983, and (5) loss of familial relationship under Section 1983. Compl. at ¶¶ 42–86. City's and FWPD's First Amended Motion to Dismiss seeks dismissal on 12(b)(1) and 12(b)(6) grounds. First Amend. MTD at 4–5.

#### A.     State Claims

City and FWPD seek dismissal of Plaintiffs' state law claims because, as a general matter, a municipality in Texas is immune from tort liability under the doctrine of government immunity. *Id.* at 8; TEX. CIV. PRAC. & REM. CODE § 101.021. Plaintiffs respond that City's and FWPD's argument must be raised in a plea to the jurisdiction and that Plaintiffs' allegations regarding jurisdictional facts are sufficient to overcome City's and FWPD's challenge. MTD Resp. at 10–12.

##### 1.     *Negligent Hiring, Supervision, and Training and Intentional Infliction of Emotional Distress*

City and FWPD assert that Plaintiffs cannot maintain a claim for negligent hiring, supervision, and training because City and FWPD have immunity as governmental units,

and said governmental immunity is not waived under the Texas Tort Claims Act.  Amend.

MTD at 8–9.  Plaintiffs respond that their negligence-based state law claims are not barred.

Resp. at 7–8.  As explained below, the Court agrees with City and FWPD.

The Fifth Circuit has clearly explained that the Texas Tort Claims Act is "not the appropriate vehicle for claims of negligent failure to train or supervise." *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009).  That is, "claims of negligent hiring, supervision, and retention do not waive governmental immunity under the Texas Tort Claims Act for claims that do not arise out of the use or condition of tangible personal property." *Jackson v. Hunt Cty.*, Nos. 3:10–cv–2373–L & 3:10–cv–2379–L, 2011 WL 1869447, at *2 (N.D. Tex. May 13, 2011).  Plaintiffs present no argument to controvert these authorities.  Thus, Plaintiffs cannot maintain a state law claim for negligent hiring, training, and supervision. *See Meyer v. Coffey*, 231 F. Supp. 3d 137, 151 (N.D. Tex. 2017).

Similarly, Plaintiffs' intentional infliction of emotional distress claim is a state-based tort claim from which City and FWPD are immune from suit. *See Hughes v. City of Dall.*, No. 3:18-CV-1770-B, 2019 WL 3081654, at *2 (N.D. Tex. July 15, 2019) (dismissing plaintiffs' intentional infliction of emotional distress claim because the city had not waived sovereign immunity under the Texas Tort Claims Act).

### 2.     *Failure to Furnish Medical Care*

Plaintiffs' final state law claim is for City's and FWPD's alleged failure to furnish medical care.  The Court is unaware of, and Plaintiffs do not present any authority to demonstrate a Texas cause of action for failure to furnish medical care.  Thus, Plaintiffs cannot state a claim for failure to furnish medical care.  However, to the extent Plaintiffs

assert this claim under a tort theory of liability, it fails for the same reasons as Plaintiffs' other state law claims. *See id.*

In light of the foregoing, City's and FWPD's Motion to Dismiss Plaintiffs' state law claims should be and is hereby **GRANTED.**

## B.    Federal Claims

A person who believes his or her constitutional rights were violated during pretrial detention may sue any "person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia" subjected them to the deprivation under 42 U.S.C. § 1983.   The Supreme Court has held that Congress intended for "municipalities and other local government units to be included among those persons to whom § 1983 applies."   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018 (1978).   This means that municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."   *Id.*   Additionally, municipalities "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."   *Id.*   But the municipality cannot be held liable solely because it employed a tortfeasor.   *Id.*   Rather, it is only liable "when execution of government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."   *Id.*

Plaintiffs allege the following policies, customs, and/or practices from City and

FWPD that caused Phillip's death:

a. Failing to promulgate adequate policies and procedures for officer conduct regarding the use of force in response to a situation;

b. Failing to promulgate adequate policies and procedures for officer conduct in the use of a firearm;

c. Failing to institute adequate policies and procedures for officer conduct when a detainee expresses serious physical distress or when that distress is readily apparent. Phillip Vallejo informed Officers of his inability to breathe thereby requiring medical treatment, and Officers awareness of Phillip Vallejo's bleeding due to gunshot wounds thereby contributing to life threatening injuries and ultimately loss of life;

d. Failing to institute adequate policies and medical procedures for the application and use of handcuffs in regard to detainees with life threatening injuries.

e. Failing to institute adequate policies and procedures for the removal of handcuffs in regard to detainees in medical distress;

f. Failing to institute adequate policies and procedures for initiation of emergency medical treatment to detainees in need;

g. Failing to institute adequate policies and procedures in regard to the determination of the number of shots an officer is to fire and under what circumstances. An adequate policy would have constitutionally advocated for the least number of shots to be fired only when a serious threat of death or injury exists. Defendant Ochsendorf's firing of at least six rounds was excessive and unconstitutional;

h. Inadequate supervision, training and retention of city employees including Defendant Ochsendorf and the additional Officers present of the Fort Worth Police Department;

i. Failing to promulgate adequate policies regarding the medical treatment of detained individuals including those suffering gunshots wounds as Phillip Vallejo experienced; and

> j. Instituting and promoting an ongoing pattern of deliberate indifference to the medical needs, health, and safety of detained individuals as evidenced by the lack of medical treatment provided to Phillip Vallejo by the numerous Officers present of the Fort Worth Police Department at the scene of the shooting.

Compl. at ¶ 54.

To state a *Monell* claim against City and FWPD, Plaintiffs are "required to plead facts that plausibly establish: 'a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom.'" *Ratliff v. Aransas Cty.*, 948 F.3d 281, 285 (5th Cir. 2020) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).

The Court holds that Plaintiffs have failed to establish an official custom or policy to support their alleged constitutional violations because the only facts alleged with particularity concern Phillip being shot. *See Ratliff*, 948 F.3d at 285. In *Ratliff*, the Fifth Circuit considered the plaintiff's custom or policy allegation that "the assault, beating, and severe injury to citizens, with little or no justification, is a persistent, widespread practice of [Aransas] County employees namely officers/deputies—that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official county policy." *Id.* The Fifth Circuit concluded that this allegation did not satisfy federal pleading standards because it did "not contain any specific facts. Instead, the complaint's only specific facts appear in the section laying out the events that gave rise to this action. Thus, Ratliff's complaint clearly does not satisfy *Twombly* or *Iqbal* with respect to the allegation that excessive force is an Aransas County 'custom.'" *Id.* Similarly, Plaintiffs here have failed to allege sufficient facts to state a *Monell* claim

against City and FWPD for excessive force because they have done no "more than describe the incident that gave rise to his injury." *Id.* (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)).

Plaintiffs' *Monell* claim also fails because they fail to satisfy the policymaker prong. That is, Plaintiffs only allege that the above-described policies were known, approved, encouraged, and ratified by all Defendants as well as "other policymakers . . . ." Compl. at ¶ 55. Such a general allegation invites no more than speculation as to a policymaker. Although the Fifth Circuit has held "courts should not "grant motions to dismiss for failing to plead [a] specific identity[,]" *Groden v. City of Dall.*, 826 F.3d 280, 286 (5th Cir. 2016), the Fifth Circuit has also affirmed dismissal of a *Monell* claim when the allegations "invite[d] no more than speculation that any particular policymaker, be it the chief of police or the city commission, knew about the alleged custom." *Peña*, 879 F.3d at 623. Accordingly, Plaintiffs' failure to identify a policymaker is fatal to their *Monell* claim. *See id.*

Plaintiffs' *Monell* claim also fails because they failed to plead an official custom, policy, or practice. Because Plaintiffs allege the absence of policies, they were required to allege facts of a persistent, widespread practice such that the Court could rationally infer it represented a custom having the force of an official City policy. *See Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995). Here, Plaintiffs only allege a single incident, so they have failed to plead an official custom, policy, or practice based on a persistent, widespread practice.

25

Finally, when a *Monell* claim is based on a policy of inadequate training, the plaintiff must allege deliberate indifference to the rights of persons with whom the police come into contact.  *See City of Canton v. Harris*, 489 U.S. 378, 392 (1989) (holding claims "alleging that the city's failure to provide training to municipal employees resulted in the constitutional deprivation [the plaintiff] suffered—are cognizable under § 1983, they can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants").  All of Plaintiffs' allegations are for deficient policies.  Thus, Plaintiffs were required to plead facts supporting that the City was deliberately indifferent.  Plaintiffs have failed to allege a policymaker who was actually aware of systemic deficiencies in officer training, that the policymaker actually drew an inference of substantial risk of constitutional harm, and that the policymaker disregarded that risk.  *See Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

Accordingly, City's and FWPD's Motion to Dismiss Plaintiffs' *Monell* claims should be and is hereby **GRANTED.**

### 1.    *Deliberate Indifference to Serious Medical Needs*

Plaintiffs' Section 1983 claim against City and FWPD for deliberate indifference to serious medical needs fails because the Court has held above that Plaintiffs have failed to state a claim against Ochsendorf for deliberate indifference to Phillip's serious medical needs.  *See Cardenas v. San Antonio Police Dep't*, 417 F. App'x 401, 402 (5th Cir. 2011) (recognizing that "because the individual defendants did not inflict any constitutional harm on [plaintiff], the district court properly granted summary judgment for the City"); *Treece*

*v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000) (explaining that because Supreme Court precedent establishes that "a city's liability is derivative of its police officer's liability," if it is determined that the officer is "not liable for committing a constitutional deprivation (tort) . . . it is impossible under existing case law for the City to be held liable for its knowledge or inaction concerning its officer's activity").

Accordingly, City's and FWPD's Motion to Dismiss Plaintiffs' deliberate indifference claim should be and is hereby **GRANTED.**

2.     *Supervisor Liability Under 42 U.S.C. § 1983*

Plaintiffs' claim for supervisor liability seeks to hold City and FWPD liable for the actions of Ochsendorf.  Compl. at ¶¶ 58–61.  However, "[s]upervisory officials cannot be held liable under section 1983 for the actions of subordinates . . . on any theory of vicarious or *respondeat superior* liability."  *Davis*, 406 F.3d at 381; *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987).  "Rather, a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation."  *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003).  "It is facially evident that this test cannot be met if there is no underlying constitutional violation."  *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006).

Because the Court has already held that the only constitutional violation for which Plaintiffs have stated a claim against Ochsendorf is their excessive force claim, Plaintiffs cannot state a claim for supervisor liability based on failure to furnish medical care or loss of familial relationship.  *See Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013).

27

However, Plaintiffs' claim for supervisor liability still fails because they have not alleged facts to establish the first element.   There are no allegations to support personal involvement between the supervisor's alleged conduct and Ochsendorf's actions.

Therefore, City's and FWPD's Motion to Dismiss Plaintiffs' supervisor liability claim should be and is hereby **GRANTED.**

3.      *Excessive Force*

Plaintiffs' Section 1983 excessive force claim fails because, as stated above, Plaintiffs failed to allege sufficient facts to demonstrate a policymaker and an official policy or custom that was a moving force behind Plaintiffs' excessive force claim. Therefore, City's and FWPD's Motion to Dismiss Plaintiffs' Section 1983 excessive force claim should be and is hereby **GRANTED.**

4.      *Loss of Familial Relationship*

Similar to Plaintiffs' deliberate indifference claim, Plaintiffs' loss of familial relationship claim against City and FWPD fails because the Court held above that there was no underlying constitutional violation by Ochsendorf.  *See Cardenas*, 417 F. App'x at 402.  Accordingly, City's and FWPD's Motion to Dismiss Plaintiffs' loss of familial relationship claim should be and is hereby **GRANTED.**

## CONCLUSION

For the foregoing reasons, the Court finds that Ochsendorf's Motion to Dismiss (ECF No. 14), should be and is hereby **GRANTED in part and DENIED in part.** Accordingly, Plaintiffs' claims for deliberate indifference, loss of familial relationship, all state law claims including intentional infliction of emotional distress, and official capacity

claims against Ochsendorf are **DISMISSED with prejudice.** Plaintiffs' only live claim remaining against Ochsendorf is an excessive force claim.

The Court finds that the City of Fort Worth's and FWPD's Amended Motion to Dismiss (ECF No. 69) should be and is hereby **GRANTED.** Accordingly, Plaintiffs' claims against City and FWPD are **DISMISSED with prejudice.**

**SO ORDERED** on this **19th day** of **June, 2020**.

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

29